In the District Court of the United States
For the District of South Carolina
**BEAUFORT DIVISION**

| | |
|---|---|
| **Jerome Cox, #25094-056,** ) | |
| ) | Civil Action No. 9:07-1114-GRA-GCK |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **Warden Donald Bauknecht,** ) | **OF THE MAGISTRATE JUDGE** |
| **FCI Williamsburg,** ) | |
| ) | |
| Respondent. ) | |
| ) | |

## I. INTRODUCTION

The petitioner, Jerome Cox ("Petitioner" or "Cox"), a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## II. STATEMENT OF THE CASE

The Petitioner is currently incarcerated at the Federal Correctional Institution ("FCI") Williamsburg Satellite Prison Camp in Salters, South Carolina and has an anticipated release date of September 28, 2008, via Good Conduct Time ("GCT") release. He was sentenced on February 12, 2007 to a 38-month term of incarceration in the United States District Court for the Eastern District of North Carolina for Distribution of more than five grams of Cocaine Base in violation of 21 U.S.C. § 841(a)(1) and Aiding and Abetting in violation of 18 U.S.C. § 2.

The Petitioner has named Donald Bauknecht, Warden at FCI Williamsburg, as the respondent (the "Respondent") in his petition. On April 22, 2007,[1] Petitioner filed this petition asserting that he is entitled to placement in a Residential Reentry Center ("RRC" or "halfway

---

[1] *See* Petitioner's Declaration of adherence to the "prison mailbox rule" made pursuant to 28 U.S.C. § 1746 and attached to his Petition.

house") for at least 10% of his total sentence and that the Bureau of Prisons (the "Bureau" or the "BOP") has denied him consideration of the factors enumerated in 18 U.S.C. § 3621(b).[2] He raises these issues in two claims:  In Count I, he asserts that the BOP has incorrectly calculated his 10% eligibility date for placement into a RRC; Petitioner contends that he should be considered for 110 days of RRC placement rather than 96 days.  In Count II, he claims he was never considered for six months of RRC placement and asks the court to order the Respondent to consider him, in good faith, for RRC placement for up to six months from his release date to probation.[3]  The Petitioner contends he is currently eligible for consideration, and any delay could cause him irreparable harm.[4]  The Petitioner argues that 28 C.F.R. §§ 570.20 and 570.21 (the "Regulations"), which limits halfway house placement to the lesser of ten percent of Petitioner's sentence or six months, is in conflict with the Congressional mandate found in 18 U.S.C. § 3621(b).  With respect to the second argument, the court construes the Petitioner's Petition essentially as challenging the validity of 28 C.F.R. §§ 570.20 and 570.21.

On July 2, 2007, the Respondent filed an answer and return to the Petition.  [6]  On July 10, 2007, the Petitioner filed a motion for summary judgment.  [8]  On August 1, 2007, the Respondent filed an amended motion for summary judgment and supporting memorandum.[5] [10]  By order filed August 2, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.

---

[2] The Respondent explains that on March 31, 2006, the BOP Executive Staff approved changing the name from Community Corrections Center ("CCC") to Residential Reentry Center ("RRC") to provide a clearer description of the services and programs offered, to associate community based programs with other reentry initiatives being implemented around the country, and to clearly differentiate community based programs from correctional facilities.

[3] *See* Petition [1] at p. 1, question 1.  The Court disagrees with Respondent's statement (made on page 8 of his Reply to Petitioner's response to motion for summary judgment [20]) that Petitioner's Petition did not set forth a challenge to the validity of 28 C.F.R. §§ 570.20 and 570.21.  The Court will construe the Petitioner's *pro se* Petition liberally, and finds that the second issue does, in fact, constitute a challenge to 28 C.F.R. §§ 570.20 and 570.21.

[4] Petition [1].

[5] It appears from the court's review of the docket sheet that the Respondent filed a motion for summary judgment but withdrew it.  *See* Docket Entry dated July 31, 2007.  Thereafter, on August 1, 2007, the Respondent filed an amended motion for summary judgment.

1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. [11] When the Petitioner failed to respond, the court issued an order granting the Petitioner an additional twenty (20) days to file a response. [13] On September 13, 2007, the Petitioner filed a response in opposition to the motion for summary judgment [15], and also filed a motion for sanctions [16], claiming that the Respondent, in its memorandum in support of the amended motion for summary judgment, intentionally and with an intent to mislead the court set forth a misquote of 18 U.S.C. § 3624(c). On September 24, 2007, the Respondent filed a reply to the Petitioner's response to the amended motion for summary judgment [20] and on October 1, 2007, the Respondent filed a response in opposition to the Petitioner's motion for sanctions. [22]

On October 23, 2007, the undersigned United States Magistrate Judge filed a Report and Recommendation which recommended that the Petitioner's claim for habeas corpus relief be dismissed without prejudice for failure to exhaust administrative remedies.[6] [23] Unbeknownst to the undersigned, the day before the Report and Recommendation was filed, the Honorable G. Ross Anderson, Jr., United States District Judge for the District of South Carolina, issued his Order in *Boston v. Bauknecht*, No. 6:07-cv-0250, 2007 WL 3119482, at *2 (D.S.C. Oct. 22, 2007), which had addressed the exhaustion issue in the context of a Section 2241 petition and concluded that it would be futile to require a Section 2241 petitioner to exhaust administrative remedies when the habeas petition was attacking the validity of the BOP regulations. Therefore, the case was remanded to the undersigned for further consideration in light of the holding in *Boston*.

---

[6] Petitioner timely filed objections to the Report and Recommendation on October 31, 2007. [26]

### III.  DISCUSSION

### A.  Subject Matter Jurisdiction

This action is brought pursuant to 28 U.S.C. § 2241 which states in part:

(a) Writs of habeas corpus may be granted by the ... district courts ... within their ... jurisdiction ...

(c) The writ of habeas corpus shall not extend to a prisoner unless-

> (1) [The prisoner] is in custody under or by color of the authority of the United States ... or ...
>
> (3) [The prisoner] is in custody in violation of the Constitution or laws or treaties of the United States.

The Respondent first argues that this court lacks subject matter jurisdiction under 28 U.S.C. § 2241 to consider the Petitioner's challenge.[7]  In *Levine v. Apker*, 455 F.3d 71 (2nd Cir. 2006), the Second Circuit Court of Appeals stated:

> [The petitioner's] petition challenges the place of his imprisonment, including the differences in the manner and conditions of imprisonment (such as the degree of physical restriction and rules governing prisoners' activities) that distinguish CCCs from other BOP penal facilities.  [The petitioner's] claim is therefore not an attack on the lawfulness of his sentence, but rather an attack on the execution of his sentence, and as such is governed by § 2241.  *Id.* at 78 (emphasis in original).

*Accord Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 242-44 (3rd Cir. 2005).  Based upon the foregoing, this court concludes that it has proper subject matter jurisdiction.  Therefore, it is recommended that Respondent's amended motion for summary judgment on this ground should be denied.

### B.  Exhaustion of Administrative Remedies

Next, the Respondent argues that it is entitled to summary judgment on the grounds that the Petitioner has failed to exhaust his administrative remedies prior to filing this action.[8]  The

---

[7] *See* Respondent's amended motion for summary judgment [10] at pp. 3-4.

[8] The Federal Bureau of Prisons has established an administrative procedure whereby a federal inmate may seek review of complaints relating to any aspect of his or her confinement.  *See* 28 C.F.R. § 542.10.

Petitioner admits he has not exhausted his administrative remedies[9] and argues that the exhaustion of administrative remedies would be futile and therefore is not necessary.[10]

The exhaustion requirement for Section 2241 petitions has been described as "prudential, rather than jurisdictional," as Section 2241 does not specifically require petitioners to exhaust judicial and administrative remedies before seeking relief under that section. *See Arango Marquez v. INS*, 346 F.3d 892, 897 (9th Cir. 2003). The Petitioner argues that because he is challenging the validity of 28 C.F.R. §§ 570.20 and 570.21, the exhaustion of administrative remedies would be futile. This court agrees. Based upon the holdings of *Boston v. Bauknecht*, No. 6:07-cv-0250, 2007 WL 3119482, at *2 (D.S.C. Oct. 22, 2007) and *Maclean v. Bauknecht*, No. 8:07-cv-0330, 2007 WL 4292795, at *3 (D.S.C. Dec. 5, 2007), the undersigned Magistrate Judge concludes that it would be futile for Petitioner to have to exhaust his administrative remedies because Petitioner is attacking the underlying validity of 28 C.F.R. §§ 570.20 and 570.21, not their application. *See also, Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 239 n. 2 (3d Cir. 2005) (upholding the district court's finding that exhaustion would be futile when a petitioner attacks the validity of the BOP regulations); *Dunkley v. Hamidullah*, 2007 WL 2572256, at * 4 (D.S.C. August 31, 2007) ("exhaustion would be futile 'because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c).'") (*quoting Fagiolo v. Smith*, 326 F.Supp.2d 589, 590 (M.D.Pa. 2004)). Moreover, the exhaustion requirements for Section 2241 petitions are not mandated by statute but are judicially imposed. *Dunkley*, 2007 WL 2572256, at *4. As such, courts may waive the exhaustion requirement. *Id*.

Although it is undisputed that Petitioner failed to exhaust his administrative remedies before filing his Section 2241 petition, the undersigned finds that the exhaustion requirement is

---

[9] Petition [1] at p. 4.

[10] *See* Petitioner's response in opposition to Respondent's amended motion for summary judgment [15] at p. 4.

waived. Based upon the foregoing, the Respondent's amended motion for summary judgment on this ground should be denied.

## C.  Whether Petitioner's Petition is Ripe for Review

Petitioner contends, in Count II of his Petition, that he is "currently eligible for consideration, and any delay may render the remedies moot causing the Petitioner irreparable harm."[11] According to the Respondent, Petitioner's anticipated release date, with good conduct time, is September 28, 2008. Thus, his earliest possible placement in an RRC is on or about March 28, 2008. Respondent contends that although Congress has mandated CCC placement for federal prisoners, consideration of such placement is not required until the last six months of incarceration, and relies upon 18 U.S.C. § 3624(c), which in pertinent part provides:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

Respondent contends that under this provision, Petitioner could receive a six (6) month stay in a CCC. Respondent contents, however, that Petitioner is not eligible for consideration under Section 3624(c) until he approaches the end of his term, citing *Pacitti v. Lindsay*, 2006 WL 1274997, 2006 U.S. Dist. LEXIS 27447, at *6 (M.D. Pa. 2006), *see also Murray v. Miner*, 2007 WL 465141 at *1 ((M.D. Pa. 2007), *White v. Hogsten*, 2006 U.S. Dist. LEXIS 46097, at *1 (M.D.Pa. July 6, 2006), *and* 18 U.S.C. § 3624(c). Respondent contends by brief that because Petitioner's earliest possible placement is March 28, 2008, he is not entitled to consideration for CCC placement until, at most, the last six months of his incarceration. Respondent therefore reasons that his Petition is not ripe and should be dismissed.

However, at the time of this writing, it appears that Petitioner has the possibility of placement in approximately two weeks. The cases relied upon by Respondent each had the

---

[11]   Petition [1] at ¶16.

possibility of placement many months after the date of the decision; indeed, the Court is aware that "[t]he decision to place an inmate into an RRC is generally not established until 11 to 13 months prior to the inmate's projected release date." *Searcy v. Broome*, 2007 WL 4443062 at *5 (D.S.C. 2007) (GRA-WMC), *citing* Declaration of Elizabeth Carlson at ¶ 4.  Therefore, the Court is not persuaded, under the particular facts of this case, that Petitioner's claim is not yet ripe for review.  Based upon the foregoing, the Respondent's amended motion for summary judgment on this ground should be denied.

### D.  Calculation of Petitioner's 10% date

As stated earlier, Petitioner first contends that the BOP has incorrectly calculated his 10% eligibility date for placement into a RRC; Petitioner contends that he should be considered for 110 days of RRC placement rather than 96 days.[12]  Respondent states that Petitioner will be eligible for consideration for placement in an RRC for up to 100 days, based upon a computation made according to the Julian Calendar (the "Julian Date").

The Petitioner began serving his thirty-eight (38) month federal sentence on February 12, 2007 and was provided with a calculation of his 10% date, calculated in accordance with Program Statement 5880.28, "Sentence Computation Manual".  The 10% date is calculated based on the "term to be served" (pursuant to 18 U.S.C. § 3624(c)), which is the total amount of time the prisoner is required to serve in confinement, not the total sentence imposed.  Under the Julian Calendar, February 12, 2007 is converted to 24880.  Petitioner's statutory release date is September 28, 2008, which is converted to 25474.  Petitioner has been awarded 412 days of Prior Custody Credit.  The calculation is as follows:

| | |
|---|---|
| Date Computation Began (2/12/07) | 24880 |
| **-** Prior custody credit | -412 days |
| 1st Anniversary Date (12/27/05) | =624468 |

---

[12]    Petition [1] at p. 5, answer to question 16.

| | | |
|---|---|---|
| Statutory Release Date (9/28/08) | | 25474 |
| - First Anniversary Date (12/ 27/05) | | -24468 |
| Total Days to serve | | =1006 days |
| 10% of time to be served | 100 days | |
| Statutory Release Date (9/28/08) | 25474 | |
| - 10% of time to be served | -100 days | |
| **Pre-Release prep date (6/20/08)** | **after 25374[13]** | |

The Court agrees with the Respondent that the calculation of 100 days is correct. Therefore, Respondent's amended motion for summary judgment should be granted with respect to the issue of the 10% calculation (100 days), and the Petitioner's motion for summary judgment should be denied with respect to this issue.

### E.  The Validity of 28 C.F.R. §§ 570.20 and 570.21

As mentioned above, Petitioner claims in Count II of his Petition that he was never considered for six months of RRC placement and asks the court to order the Respondent to consider him, in good faith, for RRC placement for up to six months from his release date to probation.  The Petitioner contends he is currently eligible for consideration, and any delay could cause him irreparable harm.[14]  Furthermore, the Petitioner argues that 28 C.F.R. §§ 570.20 and 570.21 ("the Regulations") limiting halfway house placement to the lesser of ten percent of Petitioner's sentence or six months, is in conflict with the Congressional mandate found in 18 U.S.C. § 3621(b).  With respect to the second argument, the court construes the Petitioner's Petition essentially as challenging the validity of the Regulations.

While the Fourth Circuit Court of Appeals has not ruled on this issue, the District of

---

[13]  The pre-release preparation date is actually the day following this date, as this is the last day of the 90% of the sentence served.

[14]  Petition [1].

South Carolina has held the Regulations to be invalid. *See Williams v. Pettiford*, 518 F.Supp.2d 737, 745 (D.S.C. 2007); *see also Korda v. United States*, No. 3:06-0553-PMD, 2007 WL 712286 (D.S.C. Mar. 6, 2007). In addition, the Second, Third, Eighth, and Tenth Circuits have considered the BOP regulations at issue, and have held that the current BOP regulations are invalid because the factors set forth in Section 3621(b) cannot be fully considered when the amount of time an inmate is in an RRC is categorically limited by the regulations to the lesser of six months or ten percent of a sentence without any consideration of individual circumstances. *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007); *Levine v. Apker*, 455 F.3d 71, 80-82 (2d. Cir. 2006); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); *and Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005). The court also is aware, however, that the First Circuit has held that the substance of the 2005 BOP regulations is an acceptable implementation of the governing statute. *Muniz v. Sabol*, — F.3d —, 2008 WL 497056 at *8 (Feb. 26, 2008).

Although there are competing views on whether the 2005 regulations are valid, it appears to the undersigned that the weight of the authority falls squarely in favor of the Petitioner. *See, e.g., Boston v. Bauknecht*, 2007 WL 3119482 at *8 (D.S.C. 2007) (holding that the February 2005 Regulation conflicts with Section 3621(b) and is invalid.)

Further, with regard to the Respondent's argument[15] that the 2005 regulations are entitled to substantial deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the court in *Woodall* found as follows:

> Our review of an agency's interpretation of its governing statute is normally subject to *Chevron* deference. This standard of review requires a two-step inquiry:
>
> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the

---

[15] Respondent's reply [20] to Petitioner's response at p. 11.

> statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
>
> *Chevron*, 467 U.S. at 842-43.
>
> For the reasons stated above, it appears to us that the BOP's regulations do not meet the first prong of the *Chevron* test. This first prong of *Chevron* asks whether "the intent of Congress is clear" as to the question at issue. Here, considering the language of § 3621(b), and finding support in the statute's legislative history, we believe that it is. To be sure, the BOP has been granted broad discretion in placement matters. However, "[e]ven for an agency able to claim all the authority possible under *Chevron*, deference to its statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 600 (2004). Here, we are faced with a statute providing that the BOP must consider several factors in CCC placement, and a regulation providing that the agency may not consider those factors in full. The conflict between the regulations and the statute seems unavoidable.
>
> However, even assuming the statute is ambiguous, we do not find the regulations to be "based on a permissible construction of the statute." *See Chevron*, 467 U.S. at 843. Therefore, they cannot pass the second prong of *Chevron*. Under this second step, "we must determine whether the regulation[s] harmonize[ ] with the plain language of the statute, its origin, and purpose." *Zheng v. Gonzales*, 422 F.3d 98, 119 (3d Cir. 2005) (citation and internal quotation marks omitted). For the reasons stated above, taking into consideration the language and purpose of the statute, as well as its legislative history, we find harmony lacking. We do not believe that the regulations are a permissible construction because they fail to take into account Congress's indications that certain individualized factors-including a sentencing court's recommendations-should be considered in the BOP's placement and transfer scheme. Therefore, the regulations are not "reasonable in light of the legislature's revealed design." *Id.* at 116 (quoting *NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)). We thus conclude that even if the BOP regulations pass the first prong of the *Chevron* analysis, they fail to meet the second.

*Woodall*, 432 F.3d at 248-49 (footnotes and parallel citations omitted). While this Court will recognize *Chevron* deference where such deference is due, it nonetheless must reject the Respondent's arguments in this case.

While no controlling authority exists in the Fourth Circuit, this court finds that the Regulations are invalid based upon the weight of the authority described above and the reasoning set forth in the above-cited cases. Accordingly, this court recommends that the Respondent's amended motion for summary judgment be denied with respect to this issue, and the Petitioner's motion for summary judgment be granted with respect to this issue. Further, in determining whether the Petitioner should be transferred to a CCC, the BOP should be instructed to immediately consider the factors set forth in 18 U.S.C. § 3621(b) without regard to the Regulations.

### F. Petitioner's Motion for Sanctions

Finally, Petitioner contends that sanctions should be imposed because the "Respondent's attorney intentionally, erroneously and with bad intent to mislead this Court, offered a misquote of 18 U.S.C. § 3624(c)" in its amended motion for summary judgment. The "misquote" appears to be of two parts: first, word "term" was substituted for the word "time" in the Respondent's discussion of Section 3624(c); and second, the Respondent has in its brief mis-stated a quote from *Crandon v. United States* but omitting the word "not". The Respondent admitted that the word "time" was used when the word "term" should have been used, but that the statutory language set forth in a footnote in the memorandum was, in fact, the correct language.[16] With respect to the second error alleged, the Respondent contends that the quotation is accurate,[17] and the Court agrees. On balance, the Court does not find that sanctions are appropriate in this instance, and therefore recommends that Petitioner's motion for sanctions be denied.

---

[16] Respondent's Response [22] at p. 2., citing n.10 of Respondent's memorandum in support of motion for summary judgment.

[17] Respondent's Response [22] at p. 3.

## RECOMMENDATION

Based upon the reasons set forth above, it is recommended that Petitioner's motion for summary judgment **[8] should be granted in part and denied in part,** and the Respondent's amended motion for summary judgment **[10] should be granted in part and denied in part.** Finally, Petitioner's **motion for sanctions [16] should be denied.**

*George C. Kosko* (signature)
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

March 13, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).